UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN ANTHONY WALCOTT, JR.          CIVIL ACTION

VERSUS          NUMBER: 16-15587

NURSE PAT, ET AL.          SECTION: "R"(5)

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion to dismiss, presumably under Rule 12(b)(6) of the Federal Rules of Civil Procedure, of the Defendants herein, Richard Neal ("Neal"), Pat Naquin ("Naquin"), and the Terrebonne Parish Consolidated Government ("TPCG"). (Rec. doc. 27). Plaintiff has filed no memorandum in opposition to Defendants' motion.[1] For the reasons that follow, it is recommended that Defendants' motion be granted and that Plaintiff's suit be dismissed.

Plaintiff, Steven Anthony Walcott, Jr., is an inmate of the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana. He filed the above-captioned 42 U.S.C. §1983 proceeding regarding the adequacy of the dental care that he received after allegedly breaking a tooth on a foreign object that was contained within a prison-issued meal on July 22, 2016. (Rec. doc. 1, pp. 9-13). Named as Defendants in Plaintiff's original complaint were "Nurse Pat," "Nurse/Doctor Peedie Neal," and the Terrebonne Parish Jail Medical Department ("TPJMD"). (*Id.* at pp. 1, 4, 9). Plaintiff subsequently amended his complaint to

---

[1] As Plaintiff has filed no memorandum in response to Defendants' motion, timely or otherwise, the Court may properly assume that he has no opposition to it. *Johnson v. Colvin*, No. 14-CV-0401, 2014 WL 4186790 at *1 n. 1 (E.D. La. Aug. 22, 2014)(citing Local Rule 7.5 and *Bean v. Barnhart*, 473 F.Supp. 2d 739, 741 (E.D. Tex. 2007)); *Jones v. Larpenter*, No. 13-CV-0056, 2013 WL 1947243 at *1 n. 1 (E.D. La. Apr. 12, 2013), *adopted*, 2013 WL 1947188 (E.D. La. May 10, 2013)(same); *Lucas v. Crowe*, No. 11-CV-2752, 2013 WL 870514 at *1 n. 1 (E.D. La. Feb. 15, 2013), *adopted*, 2013 WL 870437 (E.D. La. Mar. 7, 2013)(same).

substitute TPCG for TPJMD. (Rec. docs. 12, 14). Plaintiff is proceeding *in forma pauperis* in this matter pursuant to 28 U.S.C. §1915. (Rec. doc. 3).

By way of the motion *sub judice*, the moving Defendants seek the dismissal of Plaintiff's lawsuit, arguing that his allegations are insufficient to demonstrate deliberate indifference under *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976) and its progeny and that Plaintiff has not identified a policy or custom that is the moving force of the alleged constitutional violation. Of course, on a Rule 12(b)(6) of the type that is presently before the Court, the appropriate standard is whether the facts pled by the Plaintiff have sufficient facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949 (2009).

The Court will first address the motion as it relates to TPCG. That entity, as a local governing body, is a "person" that is subject to suit under §1983. *Authement v. Parish of Terrebonne*, No. 09-CV-4618, 2010 WL 1930943 at *6 (E.D. La. Mar. 19, 2010), *adopted*, 2010 WL 1930938 (E.D. La. May 10, 2010)(citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978)). "However, a governmental body [like TPCG] may not be held vicariously liable for the actions of its employees; rather, it can be [held] liable only 'when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible' [for]." *Id.* (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38). To prevail under §1983, a plaintiff must allege not only that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury. *Id.* (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122-24, 112 S.Ct. 1061, 1067-68 (1992)(and other cases)).

In the motion to amend that he previously filed in this matter,[2] Plaintiff identified TPCG as the employer of Neal and Naquin. (Rec. doc. 12, p. 2). That assertion, however, is nothing more than a suggestion that TPCG be held liable for the actions of its employees under a theory of vicarious liability which, as noted above, does not apply to §1983 proceedings. *Authement*, 2010 WL 1930943 at *6. While Plaintiff in that motion alleged that the Defendants violated his constitutional rights "… with there (sic) polices (sic)" (rec. doc. 12, p. 3), he identifies no such policies nor does he establish the necessary causal link between any such policies and the alleged constitutional violation. Having failed to do so, Plaintiff has failed to state a claim against TPCG upon which relief can be granted and his claims against said entity should be dismissed. *Authement*, 2010 WL 1930943 at *6.

Turning to Plaintiff's §1983 claims against the individually-named Defendants, Plaintiff gives no indication, in either his original complaint or in his motion to amend, of the capacity in which said Defendants were sued. "When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 888-89 (E.D. La. 2008). "'In a suit brought against a municipal official in his [or her] official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009)(quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a

---

[2] In the caption of that motion, Plaintiff properly identified the three Defendants who were named in his original complaint. (Rec. doc. 12, p. 1). However, appended at the end of Plaintiff's motion and proposed order is a page bearing a caption that includes not only TPCG and the three originally named Defendants but also two additional individuals, Kimberly Boudreaux and Dominique Baio. (*Id.* at p. 5). As those two individuals are mentioned nowhere else in the record of this case, the Court does not consider them to be Defendants in this proceeding.

3

policy merely because harm resulted from some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff "… must <u>identify</u> the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Applying the foregoing standards to the matter at hand, Plaintiff's allegations against the individual Defendants in their official capacity fail to state a claim upon which relief can be granted. "A plaintiff asserting a [S]ection 1983 claim against a municipal official in his official capacity … 'must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation.'" *Mays v. Bd. of Comm. Port of New Orleans*, No. 14-CV-1014, 2015 WL 1245683 at *9 (E.D. La. Mar. 18, 2015)(footnote omitted). Plaintiff makes no such showing here. Viewing Plaintiff's allegations as having been made against Neal and Naquin in their individual capacity, he fares no better because "[p]laintiffs suing governmental officials in their individual capacities… must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Carter*, 2009 WL 3231826 at *1 (quoting *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)). This is so because "'personal involvement is an essential element of a civil rights cause of action.'" *Id.* (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

As respects Defendant Neal, Plaintiff alleged in his complaint only that he had not formally seen a physician, a dentist, or Neal, the "Head Nurse/Doctor," as of the date that he signed his initial pleading. (Rec. doc. 1, p. 12). Plaintiff does not allege that he requested

4

medical/dental care from Neal in connection with the incident of July 22, 2016 or that Neal was even aware of the occurrence. Without such personal involvement or at least awareness, it cannot be said that Neal was deliberately indifferent to Plaintiff's serious medical/dental needs. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

With respect to Naquin, Plaintiff alleged that in the early morning hours following the day on which he encountered the foreign object in his prison food, he made an emergency medical request/sick call at 2:00 a.m. and was told that his dental situation was not emergent and that Naquin would see him at the next "pill call" that was scheduled two hours later. (Rec. doc. 1, p. 10). At the appointed time, Plaintiff saw Naquin, who provided him with Naproxen for pain relief and explained that she could put Plaintiff's name on the list to see a dentist. (*Id.* at p. 11). Later that morning, Plaintiff was told by Neal to fill out a medical request form if he wished to see the dentist and that Naproxen, aspirin, and Orajel were available for pain relief until that time. (*Id.* at p. 12). That is the extent of Naquin's involvement in Plaintiff's dental situation.

Pursuant to an order that was previously issued by the undersigned (rec. doc. 25), the Court has been provided with a copy of the medical records that were generated at TPCJC both before and after the incident of July 22, 2016. (Rec. doc. 33). Pertinent to the matter at hand, those records reflect that on July 23, 2016 at 4:30 a.m., Plaintiff completed a "Request for Medical Attention Form" in which he recalled the foreign object encounter of the previous day and the fact that Naproxen was not completely effective in alleviating his complaints of pain. Plaintiff was evaluated by Naquin that morning who noted that he was currently on a 30-day regimen of Naproxen, that Orajel was available for additional relief, and that Plaintiff would be given the appropriate form to fill out to formally request dental care. Plaintiff

dutifully completed a "Dental Request Form" that day in which he agreed to any needed extraction but declined to pay up to 30% of the dentist's charges. Throughout the remainder of the month, Plaintiff was dispensed various other medications including Glipizide, Metformin, Lisinopril, Colace, Diclofenac, Terbinafine, Bactrim, Clindamycin, Benadryl, and Diphenhydramine.

On August 12, 2016, Plaintiff requested something stronger for the relief of right shoulder pain. He was seen by an EMT later that day who provided Plaintiff with an additional 14-day supply of Naproxen. On August 18, 2016, Plaintiff completed another "Request for Medical Attention Form" requesting that his diet be modified as he was unable to consume oatmeal, beans, or red gravy. Plaintiff was seen by medical personnel later that day and he was ultimately asked to direct his dietary concerns to the kitchen dietician for his/her review. Various medications continued to be dispensed to Plaintiff throughout the month of August 2016.

Included within the medical records that were provided to the Court is another "Request for Medical Attention Form" that appears to be dated September 12, 2016 but is largely of unreadable quality. That form was responded to by Naquin the following day who noted that Plaintiff was still on the list to see the dentist and extended his supply of Naproxen for an additional 14 days. Plaintiff completed another medical-care request form on October 15, 2016 complaining of foot pain, blistering between the toes, and swelling to the little toe. Plaintiff was seen by medical personnel later that day who observed that he was already on pain medication, to which was to be added antifungal cream and Keflex pending further evaluation. A seven-day supply of Lamisil was ordered on October 17, 2016.

Later that day, Plaintiff was brought to the TPCJC Medical Department following an altercation with another inmate. Within an hour of that initial evaluation, the decision was made to transport Plaintiff to the Leonard Chabert Medical Center Emergency Department for further examination. Records from the latter facility revealed a closed tibial plateau fracture on the right side. Plaintiff was also evaluated for jaw pain but x-rays were negative for acute fracture. However, an avulsion fracture was detected on the right hand. Chest x-rays were also taken during this visit and a CT scan of the right lower extremity was performed. After discussions with an orthopedist, Plaintiff opted for surgical intervention, which was to be scheduled. Germane to the matter at hand, counsel for Defendants recently provided the Court with an update regarding Plaintiff's dental care. On October 27, 2016, Plaintiff was transported to a local dentist who performed x-ray studies followed by the surgical removal of residual toothroots. Despite being on Ultram at the time, Plaintiff was prescribed a quantity of Aleve for additional pain relief.

It is against the backdrop of the foregoing medical records, records upon which the Court may properly rely, *Gobert v. Caldwell*, 463 F.3d 339, 346 n. 24 (5th Cir. 2006), that the sufficiency of the allegations made by Plaintiff against the named Defendants be analyzed.[3/] In order to establish a constitutional violation, Plaintiff must demonstrate that the Defendants were deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain.[4/] *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet, *Gobert*,

---

[3/] "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).
[4/] This standard is the same for both pre-trial detainees and convicted prisoners. *Hale v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

463 F.3d at 346, one that has been equated with "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (footnote omitted). If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful or because pain persists despite the treatment. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). That an inmate's medical care "… may not have been the best money could buy" is insufficient to establish a constitutional violation, *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), and a prisoner is not entitled to medical treatment of his choosing simply upon request. *Stafford v. Kelly*, No. 09-CV-0133, 2011 WL 2633034 at *2 (N.D. Miss. June 3, 2011), *adopted*, 2011 WL 2633174 (N.D. Miss. July 5, 2011). And where a §1983 claim is premised on a delay in the provision of medical care, a prisoner must also establish that he suffered substantial harm as a result of the delay. *Richard v. Martin*, 390 Fed.Appx. 323, 325 (5th Cir. 2010). "Experiencing 'occasional delays in obtaining' medical treatment is insufficient to prove a refusal of providing medical care when the inmate's … medical records demonstrate

that he received treatment." *Taylor v. Bexar County*, No. 10-CV-0045, 2011 WL 759459 at *4 (W.D. Tex. Feb. 23, 2011)(quoting *Gobert*, 463 F.3d at 346); *Richard*, 390 Fed.Appx. at 324-25.

Particularly as respects the two individually-named Defendants, the medical records that have been provided to the Court fall far short of establishing the objective and subjective components needed to prevail on a claim of deliberate indifference. As discussed earlier, the allegations presented in Plaintiff's complaint are insufficient to show Neal's awareness of his dental issues, much less Neal's personal involvement in the provision of dental care so as to establish §1983 liability on his part. As for Naquin, as she is not an appropriately licensed medical doctor who is authorized to administer dental care, her function is a more limited one, that being to assist prisoners in their access to such care within the limitations inherent in the TPCJC system. *See*, *e.g.*, *Marquez v. Woody*, 440 Fed.Appx. 318, 322-23 (5th Cir. 2011). This she appears to have accomplished by directing Plaintiff to the appropriate procedures for properly seeking dental care and providing him pain alleviating treatment in the interim. *Marquez v. Quarterman*, 652 F.Supp. 2d 785, 789 (E.D. Tex. 2009). And absent an allegation of substantial harm, a delay of four months, *Merrill v. St. Bernard Parish Prison*, No. 13-CV-5834, 2014 WL 991688 at *8 (E.D. La. Mar. 10, 2014), or even five months, *Smith v. Gusman*, No. 14-CV-1153, 2015 WL 2066517 at *9 (E.D. La. May 4, 2015), in the provision of dental care fails to rise to the level of a constitutional violation. *See Martin v. Tyson*, 845 F.2d 1451, 1457-58 (7th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162 (1988)(delay in treating broken tooth not sufficiently serious). The three-month delay experienced by Plaintiff, while perhaps less than optimal, does not establish deliberate indifference.

As observed by the Fifth Circuit, "[c]ontinuing ... pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." *Mayweather*, 958 F.2d at 91. In short, the determinative issue here is not whether the dental care that Plaintiff received was substandard in some respect, whether his dental problems or pain persisted, or whether he was dissatisfied with the timeline within which such care was provided; rather, it is only whether his serious medical/dental needs were met with deliberate indifference <u>by</u> <u>the</u> <u>named</u> <u>Defendants</u>. Based upon the record that is presently before it, the Court is constrained to answer that question in the negative.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Defendants' motion be granted and that Plaintiff's lawsuit be dismissed for failing to state a claim upon which relief can be granted and as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[5]

---

[5] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

New Orleans, Louisiana, this  13th  day of            March            , 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE